## THAYER *v.* STEVENS.

A new trial, on petition, will not be granted because there is reason to believe that the jury misunderstood the instructions, and mistook the rule of damages, unless due diligence has been used to correct the mistake; and a failure to ask for more specific instructions, or to move that the jury be directed to revise their assessment of damages, or to take other measures for relief on the coming in of the verdict, will be deemed to be such negligence as to prevent the grant of a new trial on petition, unless the omission is accounted for on the ground of some accident, mistake, or misfortune.

THIS was a petition for a new trial, as follows:

Respectfully represents George W. Thayer, of Manchester, in the county of Hillsborough, that on the 20th day of December, 1858, he, and one Frank A. Brown, then living, now deceased, purchased a stock of goods of Joseph Ferren, of Manchester, and paid for them $3,288.34; that they took possession of said stock and continued to buy and sell as partners, under the name of Brown & Thayer, until the 14th day of January, 1859, when Daniel L. Stevens, a deputy sheriff for Hillsborough county, by virtue of executions in favor of Anderson, Sargent & Co. v. Joseph Ferren; J. W. Blodgett, Stowe & Co. v. Joseph Ferren; Parker, Barnes & Merriam v. Joseph Ferren, attached said stock of goods, and sold them at public auction for $2,376.82:

That said Brown died on the 30th day of January, 1859, and he, the said Thayer, on the ninth day of February, 1859, commenced a suit against said Stevens for said stock of goods; that his writ contained two counts in trover; one alleging the goods to be the property of said Brown and Thayer as joint owners, the other alleging the goods to be the property of said Thayer as surviving partner of said Brown; that at the September term, 1860, there was a trial by jury, and a verdict for the plaintiff for $1,613.92, and judgment on the verdict at the September term, 1861; that the verdict was general, without showing upon which count it was rendered.

From the case as drawn by the court and transferred at the September term, 1860, and also from the proof ready to be presented, it appears that January 14, 1858, said Joseph Ferren was engaged in the dry goods business in Manchester, and had been for several years, and that on that day his creditors: namely, Butler T. Hills, James A. Brigham, and the aforesaid Anderson, Sargent & Co., J. W. Blodgett, Stowe & Co., and Parker, Barnes & Merriam, and others, commenced suits against him, and attached his stock of goods, being all the property of which he was the owner, except a small amount of household furniture; that the attachments were made by Mace Moulton, a deputy sheriff, and the stock, under his directions, was carefully inventoried and appraised, according to law, by men disinterested and skilled in such business, at $3,288.34, and that said Brown & Thayer receipted to said Moulton for said stock of goods; that said Ferren gave said Brown & Thayer a mortgage of said stock, to secure them as receipters, and that said Ferren continued to sell at retail from said stock, and also to buy from the proceeds of the sales, sufficient to keep the stock good, or

nearly good, until December 20, 1858, when said Brown & Thayer bought of Ferren the stock of goods, and as the consideration therefor agreed to pay Ferren's creditors in the suits in which Brown & Thayer had receipted for his goods, the amount for which said receipt was given; that said Thayer did pay to said creditors the amount of said receipt in fulfillment of his agreement; that the sale thus made was made in good faith, without any trust or reservation; that they paid a fair cash value for the said stock, and that the creditors of Ferren received the full value of all the property of which he was the owner; that said Ferren has not bought any goods or other property for himself on credit from the time of his failure, in January, 1858, to the present time; that the debts upon which Ferren's stock was attached in January, 1858, were the same as those upon which the stock of Brown & Thayer was taken in January, 1859, with the exception of one or two debts of attaching creditors, who received pay in full for their debts from the proceeds of the receipt, so that, as the case stands, Ferren's creditors took all his property, and appropriated it to their benefit, and Brown & Thayer paid them its full and fair value, and then the same creditors took it again, and ask Brown & Thayer to pay for it a second time.

It appears by the case, transferred from the trial term, September, 1860, to this court, that the only ground upon which the defendant claimed to hold the goods was that the sale of December 20, 1858, from Ferren to Brown & Thayer, was fraudulent in fact or law. The jury found that it was not fraudulent in fact, and the court decided that there was no fraud in law. Thayer therefore says, that the jury must have mistaken the rule of damages when they gave a less sum than the money in the hands of Stevens, received for the goods. Thayer further says, that the verdict in said case should have been special, showing upon which count in the writ the verdict was given; whether to Thayer as surviving partner, or as joint owner, and that by some mistake, accident or misfortune, the verdict was not a special verdict.

Thayer suggests, as a matter of law, whether he could recover any thing under his count as joint owner, and if so the jury may, and probably did by mistake give him one half with the understanding that Brown's administrator could recover the other half. Thayer further suggests that the administrator of said Brown, if he could recover one half in any way, can not now maintain his action, because this was not a special verdict.

Thayer further suggests that perhaps he ought, while the suit was pending, and before judgment was made up and execution issued, to have presented his petition at the trial term, asking to have judgment entered, open to review, and he claims that it was his accident, mistake or misfortune that it was not so done.

Judgment was rendered upon the verdict, and execution issued at the September term, 1861.

Thayer further says, that this is a proper case for the exercise of the discretion of the court to give him a new trial, or a new trial by way of review, for sufficient cause shown.

It appears by the transferred case, and the fact is, that no question was made by either party as to whether Thayer was a partner or joint owner.

Wherefore Thayer says, that justice has not been done, by accident, mistake or misfortune, and that a further hearing would be just and equitable; and he prays for a new trial, or a new trial by way of review, or a review, as shall seem just and proper to the honorable court. And thereupon the respondent moves that the petition be dismissed, upon the ground that it discloses no cause for a new trial.

*G. Y. Sawyer*, for the defendant.

1. A petition for the same object, and alleging substantially the same matters as this, was presented to this court at the December term, 1861, and dismissed. Of this the court will take judicial notice; if not, the defendant asks to be permitted to show the fact. The subject matter of the petition having once been adjudicated between these parties, this petition should be dismissed on that ground.

2. No accident or mistake is set forth in the petition, and the only misfortune alleged is, substantially, that the jury did not render a verdict for so large a sum as they ought. This may have been because the court, counsel or jury misunderstood the cause, or because the jury, being divided upon the question of the plaintiff's right to recover any thing; compromised by rendering a verdict for about half his claim. In any view there is no ground presented for a new trial. *Handy* v. *Davis*, 38 N. H. 411. If any mistake, accident or misfortune is charged in the petition, it is one on the part of the court or jury, and that merely inferential. Certain facts are set forth, which, if true—and we admit that for the purposes of this case they are to be considered as true — lead to the inference that there must have been some error somewhere, either in the proceedings on the trial, or in the jury room in making up the verdict, and this is all. As to what the error was we are left to conjecture. It probably was the mistake of the six or other number of the jurors who took the view that the verdict should be for the defendant, in yielding so far as to consent to meet the other members of the jury half way. If this petition is sustained the court will have opened the door for a vast amount of business hitherto unknown to the court in investigating the proceedings in jury trials.

*Perley* and *Cross*, for the petitioner.

1. This being a motion to dismiss the petition, must be decided on the facts, which appear on the face of the proceedings. The court will not go into any inquiry out of the record. We understand the motion to be founded, not on any irregularity, but on the insufficiency of the allegations in the petition. The motion, therefore, is in the nature of a demurrer, and the statements of the petition must be taken to be true.

2. It must be taken for fact—

That the goods in question were all owned by the plaintiff and

Brown as partners; that Stevens was liable in the suit for all the goods taken by him; that the cash value of the goods was at least $2,376.82; that the whole of this stock, having belonged to the plaintiff and Brown as partners, the plaintiff as surviving partner was entitled to recover the whole value, with interest from the time of conversion, which would be at least $2,614.50; that the executors of Brown can recover nothing; that the creditors whom Stevens represents have had all the property of Ferren applied to their debts, and by this verdict and judgment, if the plaintiff can have no redress, will obtain more than $1,000 which belonged to the plaintiff as surviving partner, and that, consequently, manifest injustice has been done to the plaintiff as surviving partner to the amount of more than $1,000.

3. This result must have been produced by misfortune, accident or mistake. There is nothing from which it can be inferred that there was such negligence in the management of that suit as ought to shut the plaintiff out from the redress which the statute provides for such a case. It is not necessary that the petition or the evidence should define and fix the particular misfortune, accident or mistake which has been the occasion of the injustice. It is enough if the general result shows that injustice has been done by some misfortune, accident or mistake. Our application does not proceed on the ground of error in any instruction or ruling of the court, but on the ground that through misfortune, accident or mistake, the facts of the case did not appear to the court. We do not seek to set aside the judgment; we ask for opportunity to try the case again; and this application is addressed to the discretion of the court. *Wright* v. *Boynton*, 40 N. H. 353; *Riley* v. *Emerson*, 5 N. H. 541.

4. If the plaintiff has failed to apply at the most appropriate stage of the proceedings for his opportunity to review, this omission has happened by accident, misfortune or mistake, and he will be relieved on this petition. *Coburn* v. *Rogers*, 32 N. H. 372.

BELLOWS, J. The ground of the application for a new trial is that the damages assessed by the jury, and for which judgment was rendered, were not over one half the amount they should have been; and upon the facts stated it would seem probable that it was so. It is also alleged that the jury must have mistaken the rule of damages, in giving a less sum than the money in the hands of the defendant, which he received for the goods sued for; and the petitioner suggests that the jury may, and probably did, by mistake give the plaintiff one half, upon the understanding that the deceased partner's administrator could recover the other half. And the question arises whether, under the circumstances, this makes a case of accident, mistake or misfortune, in the meaning of the law on which the proceeding is founded.

Assuming that a mistake or misapprehension is properly alleged — although the petition merely suggests it as probable — we do not think it furnishes, under the circumstances set forth, good ground for a new trial. No complaint is made in respect to the instructions to the jury on this point; and if there had been reason to fear that

the jury might misunderstand them, the counsel should have asked for more explicit directions; or if, on the coming in of the verdict, the plaintiff's counsel had perceived the evidence of such misapprehension, he should have brought it to the attention of the court, for the purpose of having the jury sent out again to revise their computation of damages, as the court might have deemed it proper to do. *Lathrop* v. *Sharon*, 12 Pick. 172; *Raymond* v. *Nye*, 5 Met. 154; *Hagar* v. *Weston*, 7 Mass. 110. Having failed to take either course, and no reason for the omission being assigned, and judgment having been rendered upon the verdict, we think the petitioner is too late for this application. If a new trial should now be granted it would be upon a principle that would apply to all cases where it could be proved that the verdict was caused by a misapprehension of the instructions; and this, we think, would open a wider field for such applications than has heretofore been recognized by our courts, and which would be productive of great mischief.

If the application be urged upon the ground that the verdict was against evidence, it is obvious that a motion to set it aside should have been made at the same term, when the means of determining it satisfactorily were fresh in the mind of the judge who tried the cause.

Upon either view of the application we think the facts alleged do not make a case of accident, mistake or misfortune, within the meaning of the statute; there being stated no explanation of the delay in taking seasonable steps to avoid or correct the alleged error.

It is true that the court have power to set aside a verdict where it is manifest that injustice has been done; either because the verdict is clearly against evidence, or because it is manifest that the jury must have been mistaken, or disregarded their instructions; but in either case the court will proceed with great caution, and will not disturb the verdict unless due diligence has been used to avoid or correct such error; *Handy* v. *Davis*, 38 N. H. 411; *Dame* v. *Dame*, 38 N. H. 429; so, too, it does not appear that any application was made to have judgment rendered, open to review; and although it is alleged that this omission was by accident, mistake or misfortune, yet the character of such accident, mistake or misfortune is not set forth as it should be.

*Petition dismissed.*